# STATE of Wisconsin, Plaintiff-Appellant,

## v.

# Kevin HAHN, Defendant-Respondent.

### Court of Appeals

*No. 85–1614–CR. Submitted on briefs February 11, 1986.—*
*Decided June 19, 1986.*

(Also reported in 392 N.W.2d 464.)

For the plaintiff-appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *James G. Birnbaum* and *Ellen M. Frantz,* and *Johns & Flaherty, S.C.,* of La Crosse.

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J. The state appeals from an order dismissing with prejudice its complaint against Kevin Hahn for homicide by intoxicated use of a vehicle. The issue is whether the state's failure to preserve exculpa-

tory evidence justified dismissal. We conclude that the state violated its duty to preserve the evidence, and the trial court did not abuse its discretion by dismissing the complaint. We therefore affirm.

## FACTS

On January 5, 1985, defendant was driving his pick-up truck when it left the roadway and overturned. A passenger in the truck was killed. Defendant's truck was towed to a private garage at the sheriff's request. The sheriff directed the garage owner not to release the vehicle under any circumstances.

On January 11, 1985 the sheriff told defendant's attorney that the truck had been impounded. The district attorney told defendant's attorney that defendant would be charged with operating a vehicle while intoxicated, and with homicide by intoxicated use of a vehicle. On February 20, defendant was charged with only the latter offense.

On February 27, 1985, defendant's attorney telephoned the district attorney to inform him that an accident reconstruction expert would examine the truck. The district attorney was not available. The next day defendant's attorney and the expert stopped at the sheriff's office where they learned that the truck was no longer impounded. They then went to the garage where the garage owner informed them that the truck had been released to American Scrap Iron and Auto Recyclers on January 28. When they went to American Scrap Iron, they discovered that the vehicle had been partially dismantled and some of its parts sold. Defendant's expert examined the vehicle's remaining parts on February 28.

Defendant moved to dismiss the complaint because the state had destroyed exculpatory evidence. At the motion hearing, defendant testified that in early February he gave the truck's title to his insurer. The garage owner testified that an insurance company employee telephoned on January 25 and said that defendant's truck could be released to American Scrap Iron. He did not contact the sheriff's office before releasing it. The garage owner also testified that defendant had not contacted him or told him to release the truck. The court dismissed the complaint with prejudice. The state appeals.

## APPLICABLE LAW

The due process clause of the fourteenth amendment to the United States Constitution requires that criminal prosecutions must "comport with prevailing notions of fundamental fairness." *California v. Trombetta,* 467 U.S. 479, 485 (1984). The Supreme Court has "long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id.* To protect that right, the Court has developed "constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982). In *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the Court held that the due process clause of the United States Constitution gives a defendant the right to request and obtain evidence from the prosecution that is material to his guilt, and in *United States v. Agurs,* 427 U.S. 97, 112 (1976), the Court held that the due process clause requires that the prosecution must disclose to defendant

any exculpatory evidence which raises a reasonable doubt about his guilt.

The *Trombetta* Court held:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs*, 427 U.S. at 109–110, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. (Footnote omitted.)

*Trombetta,* 467 U.S. at 488–89.

In *State v. Oinas,* 125 Wis. 2d 487, 490, 373 N.W.2d 463, 465 (Ct.App. 1985), we adopted the *Trombetta* criteria.

## STANDARD OF REVIEW

■
"Because the historical facts of this case are not in dispute and because the dispute concerns the constitutional and statutory significance of those facts, this case is subject to independent appellate review." *State v. Stevens,* 123 Wis. 2d 303, 313–14, 367 N.W.2d 788, 794, *cert. denied,* — U.S. —, 88 L.Ed. 2d 125 (1985).
■
Here, there is a mixed question of fact and law. The factual portion concerns what the sheriff did, and the legal questions are whether the state possessed the vehicle and whether the facts meet the legal standard of *Trombetta.* We apply the clearly erroneous standard

356

to the trial court's findings of fact. Section 805.17(2), Stats.; *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct.App. 1983). If we accept the trial court's findings, we review *de novo* the application of the legal standard to those facts. *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651, 360 N.W.2d 554, 564 (Ct.App. 1984).

## *STATE'S DUTY TO PRESERVE EVIDENCE*

■ The state contends it did not have exclusive possession and control of defendant's truck, and therefore had no duty to preserve it as evidence. The trial court made the following findings and conclusions:

> [The State] had control of the vehicle. They took control of [it] the moment they impounded it. And then carelessly after impounding the vehicle permitted it to be kept in a public garage. The State, advised the defendant that the vehicle was impounded, [defendant] knew that he couldn't go and get it. . . . The record before me is bare as to how and who released the vehicle. . . . [T]he State placed no evidence into the record that it was an inadvertent release, or that the [employee of] American Family had no authority to . . . release the vehicle. There is nothing in this record to indicate that at the time the vehicle was released from [the] Garage that Impoundment was still in effect.

The garage owner testified that the sheriff instructed him to tow the truck to his garage and not to release it under any circumstances. When the insurance company employee said that the truck could be released to American Scrap Iron, the garage owner re-

leased the vehicle without contacting the sheriff's department, the district attorney or defendant. We conclude that the trial court's findings of fact are not clearly erroneous. Section 805.17(2), Stats. *Noll*, 115 Wis. 2d at 643, 340 N.W.2d at 577.

*State v. Morales*, 51 Wis. 2d 650, 656–57, 187 N.W.2d 841, 844 (1971), approved a definition of "possession" taken from *Black's Law Dictionary* 1325 (Rev. 4th ed. 1968): "The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, *and either held personally or by another who exercises it in one's place and name.*" (Emphasis added.) Having accepted the fact that the state impounded defendant's vehicle by instructing a private garage to keep the truck on its premises and not release it to anyone, we conclude that the state had possession of the vehicle.

We turn to whether the evidence meets *Trombetta's* legal standard. The state's duty to preserve exculpatory evidence is limited to evidence that "might be expected to play a significant role in the suspect's defense." (Footnote omitted.) *Oinas*, 125 Wis. 2d at 490, 373 N.W.2d at 465, citing *Trombetta*, 467 U.S. at 488. Section 940.09(2), Stats., creates a defense to homicide by an intoxicated user of a vehicle:

> The actor has a defense if it appears by a preponderance of the evidence that the death would have occurred even if the actor had not been under the influence of an intoxicant or did not have a blood alcohol concentration described under sub. (1) (b).

In order to use this defense, defendant contends that an examination of the intact vehicle was essential. At the motion hearing the trial court said:

> [T]he State was aware of the fact that they were contemplating the charge . . . of violation of Section 940.09. The State had to be aware of the fact that there was a statutory defense to that crime, and that they had control of the only item relating to that statutory defense. . . .

A mechanical design draftsman testified that he had ridden in defendant's truck two weeks before the accident, and had observed what he concluded was a problem with the truck's steering mechanism. He had noticed that as defendant drove the truck, he hugged the center line of the road. Defendant explained that he drove in this manner because the truck had a tendency to move back and forth. The draftsman was also a passenger in the truck when the accident occurred. He testified that just before the truck left the road it "moved to the right," and that defendant did not jerk or turn the steering wheel in a way which would have caused the movement.

Defendant's accident reconstruction expert testified that examining defendant's truck in its dismantled state would make it very difficult, if not impossible, to tell whether or not there was a defect in the vehicle which caused or somehow contributed to the accident. On cross-examination he testified it was conceivable that he could find a defect from examination and testing of the truck's remaining parts.

However, the trial court concluded:

> [O]nce [the truck] was gone . . . and [defendant was] not aware of the fact that it was no longer

impounded—and then was disman-
tled—[defendant] had lost his one and sole statutory
defense. His one opportunity to defend himself in
this action.

Defendant's truck had an apparent exculpatory
value which the state recognized, evidenced by its im-
poundment of the vehicle. The destruction of the truck
made it impossible for defendant to obtain other com-
parable evidence, because none existed. Under *Trom-
betta,* the state had a duty to preserve this evidence.

## DEFENDANT'S INVOLVEMENT IN EVIDENCE DESTRUCTION

■ The state argues that defendant actively contrib-
uted to the destruction of the exculpatory evidence
when he gave the truck's title to his insurance com-
pany, and that defendant should have known that this
action would permit the truck to be released from its
impoundment and subject it to sale for salvage. How-
ever, when the sheriff's department told defendant
that his truck had been impounded, he had no reason
to believe that any action he might take regarding the
vehicle, such as signing its title, would affect the im-
poundment. While defendant's act of signing the
truck's title may have initiated a chain of events which
resulted in the destruction of his truck, defendant's ac-
tion has no relationship to the state's duty to preserve
evidence.

■ The state also argues that had defendant exercised
reasonable diligence, he could have examined the
truck before it was destroyed. The state did not raise

this issue in the circuit court. We will not address issues raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

The state also argues that because it did not deliberately destroy the evidence to gain a tactical advantage, it did not violate defendant's right to due process. However, the nature of the destroyed evidence, not the degree of the state's culpability, determines whether defendant's right to due process has been violated. *Agurs,* 427 U.S. at 110. Having determined that the evidence met the *Trombetta* standard of constitutional materiality, we conclude that defendant's due process rights were violated, even though the state's failure to preserve the evidence was inadvertent.

### SANCTION

The Court in *Trombetta,* 467 U.S. at 487, said: "[W]hen evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing . . . the State's most probative evidence." When the government has destroyed criminal evidence, the imposition of a sanction is within the court's discretion. *United States v. Roberts,* 779 F.2d 565, 568–69 (9th Cir. 1986). An appellate court does not find an abuse of discretion merely because it would have decided the question differently. "To find an abuse of discretion an appellate court must find either that discretion was not exercised or that there was no reasonable basis for the trial court's decision." *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

The state argues that dismissal with prejudice was too severe a sanction, because the ultimate effect of the destruction of the evidence cannot be known. It contends that defendant's truck may or may not have met the standard of constitutional materiality, and was only potential exculpatory evidence. It concludes that the trial court should have allowed the case to proceed to trial where a special instruction or stipulation explaining the impaired condition of the evidence could have been given. The state also contends that an expert's examination of the truck is only one means of proving a defense and that other evidence, such as the defendant's or a passenger's testimony, would have been sufficient to support the statutory defense of sec. 940.09, Stats.

The *Roberts* court held that the determination of the sanction "depends on a balancing of 'the quality of the Government's conduct and the degree of prejudice to the accused.' " *Id.* at 569, quoting *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc), *cert. denied,* 445 U.S. 917 (1980). Here, the state attempted to justify its conduct by arguing that it did not intentionally or maliciously destroy the evidence and that defendant could have mounted a satisfactory defense even without the benefit of examining the intact vehicle. However, the trial court concluded that the destruction of the truck would have made an adequate defense impossible because no other evidence which might have been presented would have been comparable to an expert's examination of the intact vehicle.

The trial court exercised discretion by imposing a sanction. The court reasoned that with the destruction

of his truck, defendant lost his "one opportunity to defend himself in this action. . . . This certainly would be a classic case in denial of fundamental fairness." This view of the destroyed evidence, though not the only view a court could take, is not unreasonable. Because the trial court's exercise of discretion had a reasonable basis, we accept its choice of sanction.

*By the Court.*—Order affirmed.